UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NOTHERN DIVISION

| | |
|---|---|
| SCOTT HUNT, | ) |
| Plaintiff, | ) |
| v. | ) Case No: 2:05-cv-1160-T |
| CITY OF MONTGOMERY and KEVIN J. MURPHY, | ) |
| Defendants. | ) |

### AFFIDAVIT OF A. J. POLLARD

Before me, the undersigned authority, personally appeared A. J. Pollard, who is known to me and who, being first duly sworn, deposed on oath, and says as follows:

My name is A. J. Pollard. I am over nineteen years of age. I am employed with the City of Montgomery as a Sergeant on second shift for the Patrol Division of the Montgomery Police Department. It is in that capacity that I state the following:

On Friday, 05/06/05 at approximately 1649 hours, Unit 223, Officer S. A. Hunt, responded to Taco Bell at 5380 Atlanta Hwy to assist another unit with a possible subject, involved in an earlier theft. Hunt was later canceled by the first unit before he arrived at the Taco Bell.

After that, the dispatcher attempted to raise Hunt several times on the radio. I then advised the dispatcher to raise him by his identification number. Officer Hunt finally acknowledged when the dispatcher called him by his identification number. Officer Hunt, who appeared to be out of breath, put himself out at Woodvale Drive on a disturbance. Another unit, unit 206, had been dispatched to this residence on a disturbance call and had not yet arrived. At



DEFENDANT'S EXHIBIT 4

1

which time Officer Hunt requested that I switch to channel 5. Officer Hunt then advised me that he was on Atlanta Hwy when the Woodvale Drive call was dispatched and responded to assist.

Officer Hunt further stated that he made contact with a 17 year old white female that had struck her mother with an umbrella during an argument. Officer Hunt further stated that as he attempted to talk with the juvenile she became irate and threw a portable phone to the ground. Officer Hunt stated that as he attempted to place the juvenile in custody she began to hit, punch and kick him in the abdomen. At that point, he sprayed her with mace. I then asked Officer Hunt was he okay and he replied that he was fine. He stated that the suspect was being decontaminated by the paramedics and that the parents wanted to prosecute. He stated that he was transporting the suspect to the Youth Facility. I asked Officer Hunt did the mother have any visible injuries and he replied that she had redness around the neck.

At approximately 2140 hours, Offices Hunt entered the supervisor's office and advised me that he had signed a harassment petition on 17 year old white female. Officer Hunt further stated that the mother refused to prosecute. I then asked Officer Hunt why the mother did not prosecute and he stated that the magistrate said that she did not need to sign a petition for domestic violence and that his petition was sufficient enough. Officer Hunt did not advise me of this information until the end of the shift. During this conversation I also asked Officer Hunt did he take any photographs of the visible injury and he replied no but he did do a report for Domestic Violence 3rd. Officer Hunt had no excuse for not taking any photographs of the injury. There was a digital camera at the scene that was used to take photographs of the juvenile for the mace package. I asked Officer Hunt did he understand that it was standard procedure to take photographs and he said that he did.

At approximately 2230 hours, after reviewing Officer Hunt's Aerosol Restraint form, Lieutenant O'Banion and I noticed that Officer Hunt had left out pertinent information. According to the information that he had written on the mace form, Officer Hunt did not show probable cause to make an arrest of the juvenile. Lieutenant O'Banion then advised me to have Officer Hunt report to him to investigate what actually occurred at the residence. Officer Hunt was then called into the office when he arrived at headquarters at the end of the shift. I and Lieutenant O'Banion questioned Officer Hunt about the arrest. Lieutenant O'Banion read Officer Hunt's statement to him and advised him to explain in detail what happened at the scene. Officer Hunt stated that when he arrived on the scene the mother advised him that the daughter had choked her and then hit her with an umbrella during an argument that had become physical. Officer Hunt stated that the mother had visible redness around her neck. Officer Hunt further stated that the daughter became irate with him and that when he attempted to place her in custody she kicked him in the abdomen. Lt. O'Banion then asked Officer Hunt why he didn't put all this information on his mace form and Officer Hunt replied that he thought that he did not need to.

Officer Hunt was then instructed by Lt. O'Banion that he wanted him to do another mace form on Saturday. Lt. O'Banion advised him that when he filled out the new form that it should contain all the facts of the case not just the ones he felt should be included on the form. Lt. O'Banion informed Officer Hunt that on Saturday he was to go to the Youth Facility and sign a petition on the juvenile on the behalf of her mother for Domestic Violence 3rd degree due to the visible physical injury on the victim's neck.

Lt. O'Banion advised Officer Hunt that he should have included all the facts of the case to show probable cause and justification for any action taken by him. Lt. O'Banion advised Officer

3

Hunt that it was his responsibility to have signed a petition on behalf of the mother when she refused to prosecute due to the fact that there were visible physical injuries and the corroborating statement made by the mother while at the scene.

Prior to the beginning of the shift on Saturday, I was informed by Lt. O'Banion to get copies of the Domestic Violence 3rd degree report that was done on the offense. I was also informed by Lieutenant O'Banion that once Officer Hunt finished his new mace form on 05/07/05 to attach it to the old mace form that he completed on 05/06/05 so that both mace forms could be forwarded to Captain G. Hicks so that he could see the difference in the two statements given by Officer Hunt. I retrieved copies of the report and noticed that there were no 2nd shift patrol supervisor approval signatures and that it was turned in to the back desk on Friday, 05/06/05 at 1956 hours instead of being turned in to the shift supervisors at the end of the shift. When Officer Hunt arrived for work on Saturday, May 07, 2005, he handed me a new mace form that he had completed. I prepared a memo regarding the incident and potential rules violations and submitted it to Lt. O'Banion.

I did not give a statement nor participate in any way in the internal affairs investigation of the four officers on second shift patrol that originated in December 2004.

I have read the above and foregoing affidavit consisting of four (4) pages and state that it is true and correct to my present knowledge and information.

_A. J. Pollard_
A. J. Pollard

**SWORN TO AND SUBSCRIBED** before me this 20th day of July, 2006.

_Tracie Davis_
Notary Public
My commission expires 2/20/2007

(SEAL)

4